1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12  **JERRY GALINDO MARTINEZ,**

13                              Petitioner,

14        **v.**

15

16  **DAVE DAVEY, Warden,**

17                              Respondent.

**Case No. 1:14-cv-01132 LJO MJS (HC)**

**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS**

18

19        Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas

20  corpus pursuant to 28 U.S.C. § 2254.  Respondent, Dave Davey, acting warden of

21  California State Prison, Corcoran, is hereby substituted as the proper named respondent

22  pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. Respondent is

23  represented by John W. Powell of the office of the Attorney General.

24  **I.    Procedural Background**

25        Petitioner is currently in the custody of the California Department of Corrections

26  pursuant to a judgment of the Superior Court of California, County of Merced, following

27  his conviction after pleading to several counts and being found guilty by a jury on March

28

22, 2011 of the remaining counts, for stalking while a court order was in effect, attempting to dissuade a witness from prosecuting a crime, attempting to prevent and dissuade a witness from testifying, 11 counts of making criminal threats, 14 counts of misdemeanor disobeying a court order, and misdemeanor resisting a police officer. (Clerk's Tr. at 219-21.)  One count of making criminal threats was reversed on appeal, reducing Petitioner's sentence to a determinate term of sixteen years (16) years and eight months in prison.  (Answer, Ex. A, Lodged Doc. 6.)

As stated, Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate District, which found insufficient evidence to support one count of making criminal threats. (Lodged Docs. 1-3, Answer, Ex. A.) It otherwise affirmed the judgment on May 31, 2013. (Id.) Petitioner sought review from the California Supreme Court. (Lodged Docs. 4-5.) The California Supreme Court denied review on September 11, 2013. (Id.)

Petitioner proceeded to file collateral challenges to his conviction in state court in the form of petitions for writ of habeas corpus. Petitioner filed a petition with the Merced County Superior Court.  The court denied the petition in a reasoned opinion on August 1, 2014. (Lodged Docs. 7-8.) He then filed a petition for writ of habeas corpus with the California Supreme Court. The court denied the petition in a summary decision on October 29, 2014. (Lodged Docs. 9-10.)

On July 21, 2014, Petitioner filed the instant federal habeas petition. (Pet., ECF No. 1.) However, the operative petition is the first amended petition filed on November 17, 2014. Petitioner presented five claims for relief in the petition, asserting: (1) that his counsel was ineffective for failing to investigate and for improperly questioning witnesses; (2) that the trial court erred by failing to instruct the jury on a lesser included offense of attempted criminal threats; (3) that there was insufficient evidence to support a conviction for criminal threats; (4) that there was insufficient evidence to support a conviction for stalking; and (5) that the state court improperly sentenced Petitioner and failed to stay several counts of his conviction. (Id.)

Respondent filed an answer to the petition on April 28, 2015. (ECF No. 25.) Petitioner filed a traverse on May 22, 2015. (ECF No. 27.) The matter stands ready for adjudication.

## II.   Statement of the Facts[1]

FACTUAL AND PROCEDURAL SUMMARY

Elizabeth Orduno dated Martinez for about four years. It was a volatile relationship and they argued frequently. They had a child together, a daughter, who was three years old at the time of trial.

On July 22, 2009, a restraining order was issued that prohibited Martinez from contacting Orduno. The restraining order was the result of an incident of domestic violence committed by Martinez against Orduno. The restraining order was to remain in effect until July 14, 2012.

On June 24, 2010, Martinez sent three threatening text messages to Orduno's sister, Amanda. The threats were directed at Orduno. The messages read: (1) "Watch. She pushed me too far. Something is going to happen to her"; (2) "I'm going to fuck all you niggas off." "[I]f you have to get my girl, I'm going to get my kid, and if [Orduno] don't call me, I'm going to burn her grandma's house down"; and (3) "I'm on my way u better get ready for war because she is there ha ha mother fuckers."

Amanda was scared by these messages and notified the authorities. Sheriff's Deputy William Hibdon was dispatched in response to the call. When Hibdon arrived, Amanda appeared frightened. After reading the text messages, Hibdon called Orduno, who sounded nervous and frightened. Orduno was scared for her daughter's safety. Martinez was convicted of a misdemeanor in connection with the text messages sent to Amanda.

On September 3, 2010, around 5:39 p.m., Police Officer Jesus Parras was dispatched to an address where a caller indicated an individual was violating a court order. Parras arrived at the address and spoke with Orduno. She appeared to be nervous, scared, and upset. Orduno had received two threatening voice mail messages and multiple threatening text messages from Martinez during the day.

In the first voice mail, Martinez used multiple profanity and other offensive words. The message concluded with "Do what the fuck you want just don't let me catch you slippin' cause I'm gonna slash you when I catch you. And I'll be out looking for your ass tonight." The second voice mail also included profanity and contained several more threats, including: "I'm not playing with you, I will fucking kill you," "You better fucking die bitch," "Gonna shoot your mother fucking ass bitch," "I hope you fucking scared bitch," and "I'm fucking taking your life bitch." The voice mails became the basis of the count 4 offense.

---

[1] The Fifth District Court of Appeal's summary of the facts in its May 31, 2013 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

After playing the voice mails for Parras, Orduno used her cell phone to e-mail the 10 text messages to Parras. The 10 text messages read:

1. "I not stopin till ur daed bitch to nite" (count 5);

2. "Nope bitch u got another thing cum u fucked wit the wrong person oh ya im goin around tonite doin damage u think dis is a game bitch d" (count 6);

3. "Bitch plzz i changen 4 no one bitch exspecaly a bitch like u" (count 7);

4. "Pick up u scared like a bitch u wer never goin to cum ova ene ways u think im stupid i know ur another guy bitch i will catch u both e" (count 8);

5. "I jus got my gun back to day to bitch best beleave im goin to make it worth it u fucken dumd ass slut u dont know how to keep ur leggs" (count 9);

6. "I jus left ur nanas im on my way over to wer ur at trust me i will find u after I go threw a coupal house watch bitch I got sumthing f" (count 10);

7. "I told u bitch dont fuck wit me but noo u always set me off wats next bitch u cum n c me now u cant cuz im invisable bitch" (count 11);

8. "I want u dead im sick of u playen me for foo i dnt fuck wer ur at im shooting everything watch bitch" (count 12);

9. "Bitch ur fucken threw wen i c u yes i do have a gun now bitch u better run cuz im goin to shoot ur ass bitch n who ever ur wit u thin" (count 13);

10. "Fucken scandolous ass bitch im goin to fuck kill u bitch" (count 14).

Orduno told Parras she was afraid. She stated she had been sleeping with a knife under her pillow and was not sleeping in the living room area of the house because she was afraid Martinez would shoot at the house. Parras issued an alert to take Martinez into custody. After Parras left, Orduno spoke with Martinez around 8:00 p.m. that night and again around midnight. In the early morning of September 4, 2010, Orduno met up with Martinez and they went to a local park to have sex.

Later on September 4, Parras saw Martinez in the passenger seat of a parked vehicle; Martinez's cousin also was in the car. Parras called for backup and the two were taken into custody. Martinez was transported to jail, where he was given warnings pursuant to <u>Miranda v. Arizona</u> (1966) 384 U.S. 436. Martinez spoke with the authorities and at first "refused to admit to anything." Subsequently, in the same interview, Martinez claimed he was drunk and did not remember anything and then claimed he did recall sending the messages but had never threatened

4

Orduno. Martinez claimed he loved Orduno and did not want to kill her but had intended to scare her.

Martinez called Orduno from the jail on September 4. In that recorded jailhouse conversation, Orduno stated:

"I'm gonna actually be able to fuckin' walk the streets safe and not have to look over my fuckin' shoulder, okay? You did this to yourself. I didn't fuckin' do anything to you. I told you you can't say these things, you can't do these things. You need to fucking learn."

The Merced County District Attorney filed an information charging Martinez with 33 separate offenses. Prior to trial, the trial court granted the prosecution's motion to dismiss four counts.

At trial, Orduno testified that she was not frightened by Martinez's voice mail or text messages. She acknowledged, though, that her statements to Parras about sleeping with a knife under her pillow and the reason she would not sleep in the living room area of her home were true. Orduno claimed her family had pressured her to call the police; she feared if she did not do so, her family would kick her out of the house.

Parras testified regarding the multiple voice mail and text messages from Martinez and his (Parra's) conversation with Orduno. Amanda and Hibdon testified regarding the text messages Martinez sent to Amanda in 2010. Martinez's pretrial statements and the jailhouse call between Martinez and Orduno were admitted into evidence.

The prosecution presented testimony from Detective Justin Melden, who qualified as an expert on domestic violence. Melden testified that victims of domestic violence often recant their pretrial statements about incidents of abuse. Melden also testified to what law enforcement officers refer to as the cycle of violence: a violent incident, followed by a calm phase, the make-up phase, the tension phase, and then another violent incident, with the cycle repeating itself. He opined that the cycle can complete itself within as little as one hour or be drawn out over a number of weeks; the cycle repeats itself numerous times in an abusive relationship.

The jury convicted Martinez of all remaining 29 charges. The trial court found probation had been violated in three other cases. At the sentencing hearing, the trial court imposed a sentence of 17 years 4 months in the instant case and in the three cases in which probation had been violated.

People v. Martinez, 2013 Cal. App. Unpub. LEXIS 3884, 2-8 (Cal. App. May 31, 2013).

## III.   Discussion

### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the

Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  (Pet.)  In addition, the conviction challenged arises out of the Merced County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2241(d); 2254(a).  Accordingly, this Court has jurisdiction over the instant action.

### B.    Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by AEDPA provisions.

Under AEDPA, a person in custody under a judgment of a state court may only be granted a writ of habeas corpus for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a); Williams, 529 U.S. at 375 n. 7.  Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1.    Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that [are] materially indistinguishable from [a Supreme Court case] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-06).  "AEDPA does not require state and federal courts to wait for some nearly

1   identical factual pattern before a legal rule must be applied . . . The statute recognizes . .

2   . that even a general standard may be applied in an unreasonable manner." Panetti v.

3   Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The

4   "clearly established Federal law" requirement "does not demand more than a 'principle'

5   or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state

6   decision to be an unreasonable application of clearly established federal law under §

7   2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

8   (or principles) to the issue before the state court.  Lockyer v. Andrade, 538 U.S. 63, 70-

9   71 (2003).  A state court decision will involve an "unreasonable application of" federal

10  law only if it is "objectively unreasonable." Id. at 75-76 (quoting Williams, 529 U.S. at

11  409-10); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002).  In Harrington v. Richter, the

12  Court further stresses that "an *unreasonable* application of federal law is different from

13  an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011) (citing Williams, 529

14  U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks

15  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

16  correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541

17  U.S. 653, 664 (2004)).  Further, "[t]he more general the rule, the more leeway courts

18  have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S.

19  Ct. 1855, 1864 (2010).  "It is not an unreasonable application of clearly established

20  Federal law for a state court to decline to apply a specific legal rule that has not been

21  squarely established by this Court." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

22  (2009) (quoted by Richter, 131 S. Ct. at 786).

23              **2.      Review of State Decisions**

24        "Where there has been one reasoned state judgment rejecting a federal claim,

25  later unexplained orders upholding that judgment or rejecting the claim rest on the same

26  grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

27  "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

28  (9th Cir. 2006).   Determining whether a state court's decision resulted from an

7

1   unreasonable legal or factual conclusion, "does not require that there be an opinion from

2   the state court explaining the state court's reasoning." <u>Richter</u>, 131 S. Ct. at 784-85.

3   "Where a state court's decision is unaccompanied by an explanation, the habeas

4   petitioner's burden still must be met by showing there was no reasonable basis for the

5   state court to deny relief." <u>Id.</u>  "This Court now holds and reconfirms that § 2254(d) does

6   not require a state court to give reasons before its decision can be deemed to have been

7   'adjudicated on the merits.'" <u>Id.</u>

8        <u>Richter</u> instructs that whether the state court decision is reasoned and explained,

9   or merely a summary denial, the approach to evaluating unreasonableness under §

10  2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

11  or theories supported or, as here, could have supported, the state court's decision; then

12  it must ask whether it is possible fairminded jurists could disagree that those arguments

13  or theories are inconsistent with the holding in a prior decision of this Court." <u>Id.</u> at 786.

14  Thus, "even a strong case for relief does not mean the state court's contrary conclusion

15  was unreasonable." <u>Id.</u> (citing <u>Lockyer v. Andrade</u>, 538 U.S. at 75).  AEDPA "preserves

16  authority to issue the writ in cases where there is *no possibility* fairminded jurists could

17  disagree that the state court's decision conflicts with this Court's precedents." <u>Id.</u>

18  (emphasis added).  To put it yet another way:

19           As a condition for obtaining habeas corpus relief from a federal
         court, a state prisoner must show that the state court's ruling on the claim
20       being presented in federal court was so lacking in justification that there
         was an error well understood and comprehended in existing law beyond
21       any possibility for fairminded disagreement.

22  <u>Id.</u> at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts

23  are the principal forum for asserting constitutional challenges to state convictions." <u>Id.</u> at

24  787.  It follows from this consideration that § 2254(d) "complements the exhaustion

25  requirement and the doctrine of procedural bar to ensure that state proceedings are the

26  central process, not just a preliminary step for later federal habeas proceedings." <u>Id.</u>

27  (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 90 (1977)).

28

### 3.   Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).  Some constitutional errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).

## IV.   Review of Petition

### A.   Claim One:  Ineffective Assistance of Counsel

Petitioner, in his first claim, contends that his counsel was ineffective for failing to take several actions in the case including performing research and calling certain witnesses. Respondent contends that the claim was not properly exhausted. However, in light judicial efficiency, the Court will review the claim on the merits.[2] See 28 U.S.C. 2254(b)(2) (stating a court can review and deny a claim on its merits, despite Petitioner's failure to exhaust the claim).

### 1.   State Court Decision

Petitioner presented this claim by way of a petition with the Merced County Superior Court. The claim was denied in a reasoned decision by the Superior Court and summarily denied in a subsequent petition by the California Supreme Court. (See Lodged Docs. 7-10.) Because the California Supreme Court and Court of Appeal opinions are summary in nature, this Court "looks through" those decision and presumes they adopted the reasoning of the Superior Court, the last state court to have issued a

---

[2] Respondent argues that Petitioner is presenting new ineffective assistance of counsel claims that were not alleged in his state petitions. In addition to failing to exhaust these claims, it is possible that Petitioner technically defaulted on these claims, by failing to present the claims in state court, and that any attempt to do so now would be barred as untimely. Rather than deal with the procedural problems facing the claims, the court will review the claims on the merits.

1    reasoned opinion. See Ylst, 501 U.S. at 804-05.

2         With regard to the ineffective assistance of counsel claim, the Superior Court held

3    in its opinion:

> Then on June 23, 2014, petitioner filed a Petition for Writ of Habeas
> Corpus ("petition") alleging  that he received constitutionally ineffective
> assistance of counsel at trial. Specficially, he claims that his attorney was
> ineffective when he failed to object to the prior act evidence based on
> Evidence Code section 352. According to records, his attorney objected
> based on relevance grounds alone.
>
> …
>
> Finally, a claim of ineffective assistance of counsel is one that must be
> plead sufficiently to establish a primia facie case, which petitioner has
> failed to do here. (See People v. Gonzales (1990) 51 Cal.3d 1179, 1258;
> People v. Karis (1998) 46 Cal.3d 612, 656.)

11        Accordingly, the petition is denied.

12   (Lodged Doc. 8.)

13                    **2.    Legal Standard**

14        The law governing ineffective assistance of counsel claims is clearly established

15   for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).

16   Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas

17   corpus alleging ineffective assistance of counsel, the Court must consider two factors.

18   Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry

19   v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's

20   performance was deficient, requiring a showing that counsel made errors so serious that

21   he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.

22   Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell

23   below an objective standard of reasonableness, and must identify counsel's alleged acts

24   or omissions that were not the result of reasonable professional judgment considering

25   the circumstances.  Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

26   (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential. A court

27   indulges a strong presumption that counsel's conduct falls within the wide range of

28   reasonable professional assistance.  Strickland, 466 U.S. at 687; see also, Harrington v.

1    <u>Richter</u>, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

2         Second, the petitioner must demonstrate that "there is a reasonable probability

3    that, but for counsel's unprofessional errors, the result ... would have been different."

4    <u>Strickland</u>, 466 U.S. at 694.  Petitioner must show that counsel's errors were "so serious

5    as to deprive defendant of a fair trial, a trial whose result is reliable." <u>Id.</u> at 687.  The

6    Court must evaluate whether the entire trial was fundamentally unfair or unreliable

7    because of counsel's ineffectiveness. <u>Id.</u>; <u>Quintero-Barraza</u>, 78 F.3d at 1348; <u>United</u>

8    <u>States v. Palomba</u>, 31 F.3d 1456, 1461 (9th Cir. 1994).

9         A court need not determine whether counsel's performance was deficient before

10   examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

11   <u>Strickland</u>, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any

12   deficiency that does not result in prejudice must necessarily fail.   However, there are

13   certain instances which are legally presumed to result in prejudice, e.g., where there has

14   been an actual or constructive denial of the assistance of counsel or where the State has

15   interfered with counsel's assistance. <u>Id.</u> at 692; <u>United States v. Cronic</u>, 466 U.S., at

16   659, and n. 25 (1984).

17        As the Supreme Court reaffirmed in <u>Harrington v. Richter</u>, meeting the standard

18   for ineffective assistance of counsel in federal habeas is extremely difficult:

19             The pivotal question is whether the state court's application of the
              Strickland standard was unreasonable. This is different from asking
20            whether defense counsel's performance fell below <u>Strickland</u>'s standard.
              Were that the inquiry, the analysis would be no different than if, for
21            example, this Court were adjudicating a <u>Strickland</u> claim on direct review
              of a criminal conviction in a United States district court. Under AEDPA,
22            though, it is a necessary premise that the two questions are different. For
              purposes of § 2254(d)(1), "an unreasonable application of federal law is
23            different from an incorrect application of federal law." <u>Williams</u>, supra, at
              410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a
24            deference and latitude that are not in operation when the case involves
              review under the <u>Strickland</u> standard itself.
25
              A state court's determination that a claim lacks merit precludes
26            federal habeas relief so long as "fairminded jurists could disagree" on the
              correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541
27            U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this
              Court has explained, "[E]valuating whether a rule application was
28            unreasonable requires considering the rule's specificity. The more general

1
2
3

the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

4   Harrington v. Richter, 131 S. Ct. at 785-86.

5   "It bears repeating that even a strong case for relief does not mean the state

6   court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, §

7   2254(d) stops short of imposing a complete bar on federal court relitigation of claims

8   already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus

9   from a federal court, a state prisoner must show that the state court's ruling on the claim

10   being presented in federal court was so lacking in justification that there was an error

11   well understood and comprehended in existing law beyond any possibility for fairminded

12   disagreement." Id. at 786-87.

13   Accordingly, even if Petitioner presents a strong case of ineffective assistance of

14   counsel, this Court may only grant relief if no fairminded jurist could agree on the

15   correctness of the state court decision.

16            **3.     Analysis**

17   Petitioner contends that counsel was ineffective by failing (1) to object to the

18   prosecution's introduction of Petitioner's prior conviction for domestic violence, (2) that

19   counsel was ineffective for failing to investigate to determine if all of the phone calls and

20   text messages came from Petitioner, and (3) that counsel failed to call two favorable

21   witnesses at trial. The Court will address each in turn.

22   First, the prosecution moved, and the Court agreed, that Petitioner's prior charge

23   of domestic violence could be presented under Cal. Evid. Code 1109. (Rep. Tr. at 22-

24   24.) Defense counsel moved to preclude two other weapons charges, but did not object

25   to the admittance of the domestic violence charge.

26   Based on the evidence presented, Petitioner has not shown that trial counsel was

27   ineffective. It appears that there was little chance to preclude the evidence under

28   California law, and counsel successfully moved to preclude other charges that were

harmful to Petitioner's case. While Petitioner asserts that counsel was ineffective and that the prior conviction for domestic violence was prejudicial to his case, he has presented no evidence as to how defense counsel could have precluded the evidence. Petitioner has not shown that counsel fell below an objective level of reasonableness. Moreover, in light of the significant evidence regarding multiple charges against Petitioner, he has not shown that he suffered prejudice by the admittance of the prior conviction. Petitioner is not entitled to habeas relief with respect to this argument.

Next, Petitioner argues that counsel failed to conduct research regarding where the text messages originated. Petitioner's argument lacks merit. Even if the prosecution was unable to present evidence linking the text messages to a device owned by Petitioner, there was strong corroborating evidence from the victim and her relatives that she knew the texts were from Petitioner. In addition to the texts, Petitioner left voicemails to the victim which were identified by both the victim and officer Parras at trial. People v. Martinez, 2013 Cal. App. Unpub. LEXIS 3884 at 2-8. Further, Petitioner has not presented any plausible explanation as to where the texts otherwise would have come from. Petitioner has not shown that counsel's conduct fell below an objective standard of reasonableness or that he was prejudiced by his conduct. Petitioner is not entitled to habeas relief based on counsel's failure to investigate the origin of the text messages or voice mails.

Finally, Petitioner asserts that counsel failed to investigate and call witnesses favorable to the prosecution. Petitioner identifies one witness as Adam Aldana. Counsel did not call Aldana to testify at trial. But Petitioner has failed to include any argument regarding the favorable testimony Aldana would have provided if called at trial. Petitioner provided what appears to be a transcript from his pretrial Marsden hearing. (Am. Pet. at 40-51.) At the hearing, Petitioner indicates counsel failed to prepare to call Aldana as a witness, along with an unidentified neighbor and an unidentified relative. (Id. at 43-45.) The Court asked defense counsel to explain his reasons for not calling the witnesses, and counsel stated that the witnesses' testimony would not aid the defense and would

1    likely testify that Petitioner was guilty of violating the restraining order as Aldana drove

2    Petitioner to meet with the victim. (Am. Pet. at 45.) Additionally, Petitioner claimed that

3    Aldana would testify that he had never heard Petitioner threaten the victim, and that

4    Aldana had initiated three-way telephone calls between Petitioner and the victim while

5    Petitioner was in jail.  In response, defense counsel explained that this testimony was

6    problematic because Aldana's conduct in initiating the three-way telephone calls was

7    illegal and could get Aldana "into trouble." (Am. Pet. at 47.) At the end of the hearing, the

8    trial court denied the <u>Marsden</u> hearing, and found no evidence that counsel was not

9    adequately representing Petitioner. (Am. Pet. at 50.)

10       In his federal habeas petition, Petitioner offers nothing else of value to support his

11   claim. Petitioner fails to explain how counsel's investigation was deficient or identify the

12   evidence that would have been uncovered. Given Petitioner's failure to identify the

13   witnesses, and provide evidence of the favorable testimony that each witness would

14   have provided, Petitioner has failed to show that he is entitled to relief. Fairminded jurists

15   could conclude that Petitioner failed to show that counsel's performance was deficient or

16   that his trial counsel's deficient performance impacted the ultimate outcome of

17   Petitioner's trial. Petitioner has not shown that the state court's denial of his claim was an

18   unreasonable application of federal law, and it is recommended that the claim be denied.

19       **B.    Claim Two – Failure to Instruct on Lesser Included Offense**

20       Petitioner contends the trial court violated his constitutional rights by failing to

21   instruct the jury regarding the lesser included defense of attempted criminal threats.

22       **1.    State Court Decision**

23       Petitioner presented this claim by way of direct appeal to the California Court of

24   Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

25   appellate court and summarily denied in a subsequent petition for review by the

26   California Supreme Court. (<u>See</u> Lodged Docs. 1-5, Answer, Ex. A.) Because the

27   California Supreme Court's opinion is summary in nature, this Court "looks through" that

28   decision and presumes it adopted the reasoning of the California Court of Appeal, the

1   last state court to have issued a reasoned opinion. <u>See</u> <u>Ylst</u>, 501 U.S. at 804-05

2   (establishing, on habeas review, "look through" presumption that higher court agrees

3   with lower court's reasoning where former affirms latter without discussion); <u>see also</u>

4   <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts look

5   to last reasoned state court opinion in determining whether state court's rejection of

6   petitioner's claims was contrary to or an unreasonable application of federal law under

7   28 U.S.C. § 2254(d)(1)).

8        In denying Petitioner's claim, the Fifth District Court of Appeal explained:

9        <u>Attempted Criminal Threats</u>

10           Martinez contends there was no evidence Orduno was in sustained
11       fear of death or great bodily injury from any of the criminal threats and
         therefore the jury should have been instructed sua sponte on attempted
12       criminal threats.

13           As discussed in part I., *ante*, there was substantial evidence
         Orduno was in sustained fear from Martinez's threats. Consequently, we
14       are upholding the convictions on the section 422 offenses, with the
         exception of count 7 where we concluded the text message did not
15       constitute a threat. We need not repeat our analysis of the sufficiency of
         the evidence of sustained fear.

16           The question of whether the jury should have been instructed about
         a lesser included offense is reviewed de novo on appeal. (<u>Waidla</u>, *supra*,
17       22 Cal.4th at p. 733.) "When there is evidence from which the jury could
         find the lesser included offense was committed, the trial court must
18       instruct on it even if inconsistent with the defense elected by the
         defendant. [Citations.]" (<u>People v. Brito</u> (1991) 232 Cal.App.3d 316, 326,
19       fn. 9.) Failure to instruct on a lesser included offense requires reversal if it
         is reasonably probable the jury would have returned a verdict more
20       favorable to the defendant absent the error. (<u>People v. Breverman</u> (1998)
         19 Cal.4th 142, 164-165 (<u>Breverman</u>).)
21
22           We acknowledge there was some conflicting evidence on the issue
         of sustained fear because Orduno recanted in part her pretrial statements
23       to authorities. We, however, conclude the evidence of sustained fear was
         overwhelming. This conclusion is based on (1) Orduno's continued
24       acknowledgement at trial that the voice mail and text messages from
         Martinez caused her to sleep with a knife under her pillow, (2) Parras's
25       testimony regarding Orduno's pretrial statements and his own
         observations, (3) Melden's expert testimony that domestic violence victims
26       often recant, and (4) case law establishing that the sustained fear element
         may be brief. Any evidence of a lack of sustained fear was very slight and,
27       as the trial court necessarily determined, not substantial enough to
         warrant consideration by the jury of the lesser offense of attempted
28       criminal threats. (<u>Breverman</u>, *supra*, 19 Cal.4th at pp. 161-162.)

Regardless, assuming it was error to fail to instruct on attempted criminal threats, any error was harmless. (Breverman, *supra*, 19 Cal.4th at p. 178.) First, as we noted, the evidence of sustained fear was overwhelming. The sustained fear required by section 422 may amount to less than one minute, depending on the circumstances, and certainly the fear that causes one to sleep with a knife under a pillow at night is of sufficient length to satisfy the statutory requirement of sustained fear. (Fierro, supra, 180 Cal.App.4th at p. 1349.)

Second, there is no claim by Martinez that the jury instructions on the substantive offense of violating section 422 were deficient or altered the prosecution's burden of proof. Absent some affirmative indication in the record to the contrary, and there is none here, we presume the jury followed the instructions given. (People v. Holt (1997) 15 Cal.4th 619, 662.) Therefore, the record establishes that the properly instructed jury resolved the factual issue of whether the prosecution proved beyond a reasonable doubt that Orduno suffered sustained fear adversely to Martinez and reversal is not required. (Breverman, *supra*, 19 Cal.4th at p. 165.)

Third, the elimination of a basis to find Martinez guilty could only have inured to his benefit. The crime of attempted criminal threats required less proof in that the prosecution was not required to prove beyond a reasonable doubt that Orduno suffered sustained fear as a result of Martinez's threats. If the jury had not found the element of sustained fear to have been proven beyond a reasonable doubt, it would have acquitted on the criminal threats counts. Absent a showing of prejudice, a defendant may not complain of instructional error favorable to him. (People v. Lee (1999) 20 Cal.4th 47, 57.)

Under the facts of this case, it is not reasonably probable the result would have been more favorable to Martinez if the jury had been instructed on attempted criminal threats. Consequently, any error in failing to instruct the jury so is not prejudicial and reversal is not required. (Breverman, supra, 19 Cal.4th at pp. 164-165.)

People v. Martinez, 2013 Cal. App. Unpub. LEXIS 3884 at 22-26.

**2.    Analysis**

To the extent Petitioner alleges the instructional claim violated state law, Petitioner's claim is not cognizable in this proceeding. The Supreme Court has held that a challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. Estelle v. McGuire, 502 U.S. at 71-72. Section 2254 requires violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3). To the extent that Petitioner raises state law claims, his claims should be dismissed.

Although the Supreme Court has held that the failure to instruct on lesser included

1   offenses can constitute constitutional error in capital cases, <u>Beck v. Alabama</u>, 447 U.S.

2   625, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980), it has reserved decision on whether such

3   an omission in non-capital cases constitutes constitutional error, <u>id.</u> at 638 n.7. When the

4   Supreme Court has expressly reserved consideration of an issue, there is no Supreme

5   Court precedent creating clearly established federal law relating to a petitioner's habeas

6   claim. <u>Alberni v. McDaniel</u>, 458 F.3d 860, 864 (9th Cir. 2006). Therefore, a petitioner

7   cannot rely on circuit authority, and there is no basis for relief pursuant to § 2254(d)(1)

8   for an unreasonable application of clearly established federal law. <u>Alberni v. McDaniel</u>,

9   458 F.3d at 864; <u>Brewer v. Hall</u>, 378 F.3d 952, 955-57 (9th Cir. 2004).

10        Accordingly, there is no clearly established federal law within the meaning of §

11   2254(d) concerning a state court's rejection of a claim that Sixth and Fourteenth

12   Amendment rights in a non-capital case were violated by a failure to instruct on a lesser

13   included offense. Thus, such a claim is not cognizable in a proceeding pursuant to 28

14   U.S.C. § 2254 and is subject to dismissal. <u>Windham v. Merkle</u>, 163 F.3d 1092, 1105-06

15   (9th Cir. 1998).

16        Further, the absence of the instruction did not result in any fundamental

17   unfairness. The only basis for federal collateral relief for instructional error is that an

18   infirm instruction or the lack of instruction by itself so infected the entire trial that the

19   resulting conviction violates due process. <u>Estelle v. McGuire</u>, 502 U.S. at 71-72. The

20   Court in <u>Estelle</u> emphasized that the Court had very narrowly defined the category of

21   infractions that violate fundamental fairness, and that beyond the specific guarantees

22   enumerated in the Bill of Rights, the Due Process Clause has limited operation. 502 U.S.

23   at 72-73.

24        However, when habeas is sought under 28 U.S.C. § 2254, a failure to instruct on

25   the defense theory of the case constitutes error if the theory is legally sound and

26   evidence in the case makes it applicable. <u>Clark v. Brown</u>, 450 F.3d 898, 904 (9th Cir.

27   2006); <u>see</u> <u>Mathews v. United States</u>, 485 U.S. 58, 63, 108 S. Ct. 883, 99 L. Ed. 2d 54

28   (1988) (reversing a conviction and holding that even if a defendant denies one or more

1   elements of the crime, he is entitled to an entrapment instruction whenever there is

2   sufficient evidence from which a reasonable jury could find entrapment, and the

3   defendant requests such an instruction).

4       Petitioner contends that the trial court should have instructed the jury with regard

5   to attempted criminal threats. The state court was reasonable in determining that to the

6   extent there was any error in failing to provide the instruction, it was harmless. The state

7   court found that any error was harmless as it was more likely Petitioner was guilty of

8   making criminal threats as there was significant evidence of prolonged fear by the victim

9   in light of her testimony that she called law enforcement and started sleeping with a knife

10  under her pillow for protection. Petitioner points out that during this time the victim met

11  with and had relations with Petitioner. However, the fact that she interacted with

12  Petitioner does not negate the fact that she could still have sustained fear of Petitioner at

13  other times.

14      The finding of the state court on appeal was reasonable and Petitioner has not

15  shown that he suffered any fundamental unfairness or that the omission had any

16  substantial or injurious effect or influence in determining the jury's verdict. Accordingly, it

17  is recommended that Petitioner's claim concerning the failure to instruct on the lesser

18  included offense of attempted criminal threats be denied.

19          **C.    Claims Three and Four – Insufficient Evidence**

20      Petitioner contends in his third and fourth claims that there was insufficient

21  evidence to support his convictions for stalking and his eleven criminal threat

22  convictions.

23              **1.    State Court Decision**

24      Petitioner presented these claims by way of direct appeal to the California Court

25  of Appeal, Fifth Appellate District. The claims were denied in a reasoned decision by the

26  appellate court and summarily denied in a subsequent petition for review by the

27  California Supreme Court. (See Lodged Docs. 1-5, Answer, Ex. A.) Because the

28  California Supreme Court's opinion is summary in nature, this Court "looks through" that

1   decision and presumes it adopted the reasoning of the California Court of Appeal, the

2   last state court to have issued a reasoned opinion. See Ylst, 501 U.S. at 804-05.

3       In denying Petitioner's claims, the Fifth District Court of Appeal explained:

4   Attempted Criminal Threats

5   Sufficiency of the Evidence

6       Martinez challenges the sufficiency of the evidence to support the
7   stalking and criminal threats convictions. With the exception of the count 7
    conviction for criminal threats, the People disagree with Martinez's
8   contentions.

9   Standard of Review

10      In assessing a claim of sufficiency of evidence, the reviewing
    court's task is to review the whole record in the light most favorable to the
11  judgment to determine whether it discloses substantial evidence that is
    reasonable, credible, and of solid value such that a reasonable trier of fact
12  could find the defendant guilty beyond a reasonable doubt. (People v.
    Johnson (1980) 26 Cal.3d 557, 578.) The federal standard of review is to
13  the same effect: Under principles of federal due process, review for
    sufficiency of evidence entails not the determination whether the reviewing
14  court itself believes the evidence at trial establishes guilt beyond a
    reasonable doubt, but, instead, whether, after viewing the evidence in the
15  light most favorable to the prosecution, any rational trier of fact could have
    found the essential elements of the crime beyond a reasonable doubt.
16  (Jackson v. Virginia (1979) 443 U.S. 307, 317-320.)

17      The standard of review is the same in cases in which the
    prosecution relies mainly on circumstantial evidence. (People v. Stanley
18  (1995) 10 Cal.4th 764, 792.) "'"Although it is the duty of the jury to acquit a
    defendant if it finds that circumstantial evidence is susceptible of two
19  interpretations, one of which suggests guilt and the other innocence
    [citations], it is the jury, not the appellate court[,] which must be convinced
20  of the defendant's guilt beyond a reasonable doubt. '" If the circumstances
    reasonably justify the trier of fact's findings, the opinion of the reviewing
21  court that the circumstances might also reasonably be reconciled with a
    contrary finding does not warrant a reversal of the judgment."' [Citations.]"'
22  [Citation.]" (People v. Rodriguez (1999) 20 Cal.4th 1, 11.)

23  Stalking

24      Martinez argues there was no evidence Orduno suffered
    substantial emotional distress; thus, he claims there was no harassment
25  within the meaning of section 646.9.

26      A conviction under section 646.9 requires that the defendant have
    (1) willfully, maliciously, and repeatedly followed or harassed another
27  person, (2) conveyed a credible threat, and (3) intended the threat to place
    the person in reasonable fear of his or her safety or the safety of
28  immediate family. (§ 646.9, subd. (a).) Section 646.9, subdivision (e)
    defines "harass" as engaging in a knowing and willful course of conduct

directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person and serves no legitimate purpose.

Martinez quotes and relies upon a prior definition of the term "harass" that was contained in the statute from 1990 to 2002. (Stats. 1990, ch. 1527, § 1, pp. 7143-7144.) Section 646.9, however, was amended in 2002. (Stats. 2002, ch. 832, § 1.) The case cited by Martinez in support of his contention, <u>People v. Ewing</u> (1999) 76 Cal.App.4th 199, was decided before the 2002 amendments to section 646.9 and therefore is not persuasive.

The prosecution here was required to prove that Martinez engaged in a knowing and willful course of conduct directed at Orduno that seriously alarmed, annoyed, tormented or terrorized her. The prosecution was not required to establish that Orduno suffered substantial emotional distress. The prosecution established that Martinez sent a series of messages to Orduno, both voice mail and text. Those messages conveyed threats of harm to Orduno and/or to her immediate family; and Orduno was seriously alarmed about the threats, which is why she notified police and took to sleeping with a knife under her pillow for protection.

We think <u>People v. Uecker</u> (2009) 172 Cal.App.4th 583, 595-596 (<u>Uecker</u>) is helpful. In <u>Uecker</u>, the defendant placed calls to a real estate agent but refused to tell her how he obtained her contact information and refused to provide the information she needed in order to determine if the defendant qualified to purchase a home. When the agent tried to cut off contact, the defendant continued to call her. The agent stated the defendant's actions made her feel "afraid and trapped." (<u>Id.</u> at p. 596.) The appellate court upheld a conviction for stalking under section 646.9. (<u>Ibid.</u>)

Like <u>Uecker</u>, the evidence here established that Martinez's conduct constituted harassment of Orduno under section 646.9.

<u>Criminal Threats Convictions</u>

Martinez raises two challenges to his criminal threats convictions. First, he contends all must be reversed because there was insufficient evidence the threats caused Orduno to be in sustained fear, as required by section 422. Second, he argues that the content of the messages in counts 7 and 11 did not constitute a credible threat.

<u>Sustained Fear Analysis</u>

As used in section 422, "sustained" has been defined to mean "a period of time that extends beyond what is momentary, fleeting, or transitory.... The victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear. [Citation.]" (<u>People v. Allen</u> (1995) 33 Cal.App.4th 1149, 1156.) "Fifteen minutes of fear of a defendant who is armed, mobile, and at large, and who has threatened to kill the victim and her daughter, is more than sufficient to constitute 'sustained' fear for purposes of this element of section 422." (<u>Ibid.</u>) "Sustained" fear may amount to less than one minute, depending on the circumstances, such as when a defendant brandishes a weapon and threatens to kill someone. (<u>People v. Fierro</u> (2010) 180 Cal.App.4th 1342, 1349 (<u>Fierro</u>).)

The evidence established that Martinez sent numerous messages to Orduno, both text and voice mail, over a period of time on September 3, 2010. When Parras was dispatched to Orduno's residence the evening of September 3 in response to a call that Martinez was violating a court restraining order, Parras spoke to Orduno. She appeared nervous, scared, and upset. She shared with Parras the voice mail and text messages she had received from Martinez that day. She told Parras she was afraid and was sleeping with a knife under her pillow. She also stated she was scared that Martinez was going to shoot at her house.

At trial, Orduno contradicted her statement to Parras and claimed she was not frightened by Martinez's messages. She acknowledged, though, that she had been sleeping with a knife under her pillow and was afraid to sleep in the living room of her house. Melden testified as an expert on domestic violence and informed the jury that victims of domestic violence often recant their statements to authorities about domestic violence.

Obviously, there was conflicting testimony—Parras testified to Orduno's statements to authorities about the domestic violence; Orduno recanted some of her statements in her trial testimony; and Melden explained victims of domestic violence often recant their testimony.

It is the province of the jury to assess credibility of witnesses and resolve conflicts in evidence. "[A] reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (People v. Young (2005) 34 Cal.4th 1149, 1181.)

The jurors here were entitled to credit Parras's testimony regarding Orduno's statements to authorities at the time of the events, to reject Orduno's testimony recanting her statements to Parras, and to rely upon Melden's testimony to explain Orduno's actions.

Credible Threat Analysis

As to count 7, the People concede that the content of the message did not convey a credible threat and thus the conviction should be reversed. The text message that was the basis of the conviction read: "Bitch plzz i changen 4 no one bitch exspecaly a bitch like u." Though crude and offensive, this message did not contain a threat of death or great bodily injury to any person and we therefore will reverse the count 7 conviction.

Count 11, however, was supported by substantial evidence. The text message that formed the basis of the conviction read: "I told u bitch dont fuck wit me but noo u always set me off wats next bitch u cum n c me now u cant cuz im invisable bitch."

An implied or conditional threat, which this was, may violate section 422. Otherwise innocuous language has been deemed a violation of the statute if the words are understood as a threat of harm when looking at the circumstances and conduct of the defendant. (See Mendoza (1997) 59

Cal.App.4th 1333, 1340 (<u>Mendoza</u>).) Similarly, threats made conditional on conduct that is highly likely to occur are punishable under the statute. (<u>See People v. Bolin</u> (1998) 18 Cal.4th 297, 339; <u>People v. Dias</u> (1997) 52 Cal.App.4th 46, 53.) "The jury is 'free to interpret the words spoken from all of the surrounding circumstances of the case.' [Citation.]" (<u>People v. Hamlin</u> (2009) 170 Cal.App.4th 1412, 1433.)

Here, taken in context, Martinez's threat of harm to Orduno was clear. Martinez had left voice mail and text messages telling Orduno he would be out looking for her and intended to slash, shoot, or otherwise harm her if he saw her. Telling her "dont fuck wit me," that she "set" him "off," and that he was now "invisable" reasonably can be interpreted as Martinez sending Orduno a message reminding her that he was angry with her, watching for her, and waiting for an opportune moment to cause her harm.

The jury reasonably concluded the text message forming the basis of the count 11 conviction, under the circumstances, constituted a threat under section 422. (<u>People v. Wilson</u> (2010) 186 Cal.App.4th 789, 807.)

<u>Conclusion</u>

Section 422 targets those who, like Martinez, seek to instill fear in others. (<u>In re Ryan D.</u> (2002) 100 Cal.App.4th 854, 861.) There was sufficient evidence to support the counts 4, 5, 6, 8, 9, 10, 11, 12, 13, and 14 convictions for violating section 422. The evidence was insufficient to support the count 7 conviction.

<u>People v. Martinez</u>, 2013 Cal. App. Unpub. LEXIS 3884 at 8-16.

### 2.    Legal Standard

The Fourteenth Amendment's Due Process Clause guarantees that a criminal defendant may be convicted only by proof beyond a reasonable doubt of every fact necessary to constitute the charged crime. <u>Jackson v. Virginia</u>, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Under the <u>Jackson</u> standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319 (emphasis in original).

In applying the <u>Jackson</u> standard, the federal court must refer to the substantive elements of the criminal offense as defined by state law. <u>Jackson</u>, 443 U.S. at 324 n.16. A federal court sitting in habeas review is "bound to accept a state court's interpretation of state law, except in the highly unusual case in which the interpretation is clearly untenable and amounts to a subterfuge to avoid federal review of a constitutional

1    violation." <u>Butler v. Curry</u>, 528 F.3d 624, 642 (9th Cir. 2008) (quotation omitted).

2                        **3.    Analysis**

3                             **a.    Criminal Threats**

4    The state court denied Petitioner's claims of insufficiency of the evidence as to the

5    criminal threats convictions. He asserted there was a lack of evidence of sustained fear

6    and that the messages did not convey credible threats.

7    Under California law, to prove a defendant guilty of a criminal threat the

8    prosecution must establish that the defendant threatened to seriously injure or kill

9    someone and the threat caused the victim to experience "sustained" fear for his safety.

10   Cal. Pen. Code § 422; <u>In re George T.</u>, 33 Cal.4th 620, 630, 16 Cal. Rptr. 3d 61, 93 P.3d

11   1007 (2004). Though California law does not specifically define how much time is

12   required to rise to the level of "sustained," California courts have found mere minutes of

13   sustained fear sufficient. <u>See, e.g.</u>, <u>People v. Fierro</u>, 180 Cal. App. 4th 1342, 1349, 103

14   Cal. Rptr. 3d 858 (2010) ("When one believes he is about to die, a minute is longer than

15   momentary, fleeting, or transitory." (internal quotations omitted)); <u>People v. Allen</u>, 33

16   Cal.App.4th 1149, 1155-56, 40 Cal. Rptr. 2d 7 (1995).

17   While noting that there was conflicting testimony, including the fact that the victim

18   recanted some of her statements, the state court found there was sufficient evidence

19   based on the victim's statements and the Officer's observations that the victim appeared

20   nervous, scared, and upset, and her comments that she started sleeping with a knife

21   under her pillow. Those facts support a finding of sustained fear as the victim would

22   necessarily would have remained fearful for a significant period to take to arming herself

23   while she slept.

24   Petitioner also asserted that there was insufficient evidence to support a finding

25   that a credible threat was made.  California Penal Code § 422 defines a criminal threat

26   as:

27        "Any person who willfully threatens to commit a crime which will result in
          death or great bodily injury to another person, with the specific intent that
28        the statement, made verbally, in writing, or by means of an electronic

                                    23

1

2

3

4

> communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety."

Cal. Pen. Code § 422.

5

6

7

8

9

10

11

12

"[T]he use of the word 'so' indicates that unequivocality, unconditionality, immediacy, and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim." People v. Bolin, 18 Cal.4th 297, 340 (1998) (citation omitted). Moreover, "[a] prosecution under section 422 does not require an unconditional threat of death or great bodily injury." People v. Wilson, 186 Cal.App.4th 789, 806 (Cal. App. 2010).

13

14

15

16

17

18

19

20

21

22

23

In deciding whether a communication constitutes a credible threat, a court takes into consideration the communication on its face and in the context of its surrounding circumstances. Bolin, 18 Cal.4th at 339-40; People v. Mendoza, 59 Cal. App.4th 1333, 1340 (Cal. App. 1997) (the parties' history can be considered as one of the relevant circumstances). However, "the statute was not enacted to punish emotional outbursts, it targets only those who try to instill fear in others." In re Ryan D., 100 Cal.App.4th 854, 861 (Cal. App. 2002). Nor does the threat have to include details about the time or precise manner of execution. People v. Butler, 85 Cal.App.4th 745, 752 (Cal. App. 2000). "[I]t is the circumstances under which the threat is made that give meaning to the actual words used. Even an ambiguous statement may be a basis for a violation of section 422." People v. Hamlin, 170 Cal.App.4th 1412, 1433 (Cal. App. 2009).

24

25

26

27

28

As described, Petitioner made multiple threats to kill or harm the victim. When viewed in the totality of all the evidence presented, the threats, whether conditional or unconditional were credible and caused sufficient fear in the victim to call the authorities and arm herself. There was sufficient evidence to show that the threats (but for count 7 which the state court reversed) were credible. The state court was reasonable in denying

1    Petitioner's claim for sufficiency of the evidence.

2        Finally, in his traverse, Petitioner contends that there was insufficient evidence

3    that Petitioner sent the text messages. (Traverse at 17-19.) Even though Petitioner

4    asserts that no records were produced from the phone company to verify that the

5    messages came from a phone in his possession, the victim testified at trial that the

6    messages were sent to her from Petitioner. (See Rep. Tr. at 142-180.) The victim's

7    statements alone, when viewed in the light most favorable to the prosecution, were

8    sufficient to allow the jury to find beyond a reasonable doubt that Petitioner sent the

9    messages. Jackson, 443 U.S. at 319.

10       Viewing the evidence in the light most favorable to the prosecution, there is

11   sufficient evidence to show that Petitioner committed the crime of making criminal

12   threats. Under Jackson and AEDPA, the state decision is entitled to double deference on

13   habeas review. Based on the Court's independent review of the trial record, it is

14   apparent that Petitioner's challenges are without merit. There was no constitutional error,

15   and Petitioner is not entitled to relief with regard to this claim.

16                              **b.    Stalking**

17       Petitioner's fourth claim asserts that the prosecution did not establish that the

18   victim suffered substantial emotional distress, and therefore did not prove the required

19   elements of the stalking charge. The elements of the criminal charge as determined by

20   state law, is binding on this court. Woods v. Sinclair, 764 F.3d 1109, 1136 (9th Cir. 2014)

21   (citing Bradshaw v. Richey, 546 U.S. 74, 76 (2005)).

22       As described by the state court, a conviction for stalking under Cal. Penal Code §

23   646.9 requires that the defendant have (1) willfully, maliciously, and repeatedly followed

24   or harassed another person, (2) conveyed a credible threat, and (3) intended the threat

25   to place the person in reasonable fear of his or her safety or the safety of immediate

26   family. (Cal. Penal Code § 646.9(a).)

27       To the extent that Petitioner renews his claim made in state court that there was

28   insufficient evidence that the victim suffered substantial emotional distress, the state

court properly determined that emotional distress was not an element of the offense. The state court found there was evidence that Petitioner sent a series of text and voice messages to victim conveying threats of harm to her and her family. (People v. Martinez, 2013 Cal. App. Unpub. LEXIS 3884 at 8-16.) The state court found that the threats intended to place the victim in fear, and ultimately did, based on the fact that the victim notified the police and started sleeping with a knife under pillow for protection. (Id.)

Petitioner, in his traverse argues that there was insufficient evidence that Petitioner harassed the victim, and that the victim was not placed in fear.  (Traverse at 19-20.) Petitioner contends that the victim was not harassed as they had a consensual sexual encounter soon after the threats were made. (Id. at 21.)

Harass under Cal. Penal Code § 646.9 is defined as "engag[ing] in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose." Despite the evidence that the victim met with Petitioner after the threats were made, when viewing the evidence in the light most favorable to the prosecution, there was ample evidence to support the conviction. The state court was reasonable in finding that victim was alarmed by Petitioner's conduct in light of the evidence that she contacted law enforcement and started sleeping with a weapon for protection. The fact that the victim was willing to meet with Petitioner after the threats were made does not negate the finding that a rational trier of fact would determine that sufficient evidence was presented to prove the essential elements of the crime beyond a reasonable doubt. Even if the victim was not in fear when she met with Petitioner, there is sufficient evidence that the threats placed her in fear based on the conduct described. Petitioner has not shown that the state court's determination that there was sufficient evidence to support the conviction for stalking was unreasonable.

Under Jackson and AEDPA, the state decision is entitled to double deference on habeas review. Based on review of the trial record, there was sufficient evidence to deny Petitioner's challenge to whether there was sufficient evidence to support the stalking

1   conviction. There was no constitutional error, and Petitioner is not entitled to relief with

2   regard to this claim.

3        **D.**    **Claim Five: Error in Imposing Consecutive Sentences**

4        Petitioner, in his fifth and final claim, contends that the trial court erred in imposing

5   consecutive terms for the criminal threats for the text messages, rather than considering

6   them all to be one course of conduct.

7        **1.**    **State Court Decision**

8        Petitioner presented this claim by way of direct appeal to the California Court of

9   Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

10   appellate court and summarily denied in a subsequent petition for review by the

11   California Supreme Court. (<u>See</u> Lodged Docs. 1-5, Answer, Ex. A.) Because the

12   California Supreme Court's opinion is summary in nature, this Court "looks through" that

13   decision and presumes it adopted the reasoning of the California Court of Appeal, the

14   last state court to have issued a reasoned opinion. <u>See Ylst</u>, 501 U.S. at 804-05.

15        In denying Petitioner's claim, the Fifth District Court of Appeal explained:

16
17        Martinez contends the trial court erred when it imposed consecutive sentences for each of his 11 criminal threats convictions. He argues the consecutive sentences were improper under section 654 because the crimes constituted a single, indivisible course of conduct. Section 654, subdivision (a) provides:
18

19        "An act or omission that is punishable in different ways by
20   different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be
21   punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution
22   for the same act or omission under any other."

23        "Whether a course of criminal conduct is divisible and therefore
24   gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor." (<u>Neal v. State of California</u> (1960) 55 Cal.2d 11, 19; <u>see</u> <u>People v. Latimer</u> (1993) 5 Cal.4th 1203, 1208.)
25   Whether there was more than one intent or objective is a question of fact for the trial court and the trial court's determination will be upheld on
26   appeal if there is substantial evidence to support it. (<u>People v. Nelson</u> (1989) 211 Cal.App.3d 634, 638.)
27

28        At sentencing, defense counsel argued that the sentences imposed on counts 4 through 14 should be stayed pursuant to section 654. The trial

court rejected Martinez's argument that the threatening messages were all an indivisible course of conduct and found that even though the voice mails and text messages were sent "over a relatively short period of time, each continued separately." Substantial evidence supported the trial court's finding.

Each threatening message was sent separately, each message contained different threatening language, and each was a complete and discrete act under section 422. In count 4, Martinez threatened in a voice mail to "slash" Orduno; in count 5, he threatened in a text message he would not stop until Orduno was dead; and in count 6, Martinez threatened in a text message to do "damage" that night. The count 8 text message warned Orduno about being with another male and that Martinez would "catch" them; in count 9, Martinez sent a text stating he had just gotten his gun back and would "make it worth it"; and in count, 10 Martinez's text stated he had just left Orduno's "nana[']s" and was on his way to her location, where he would search every house until he found her. In count 11 Martinez warned Orduno "dont fuck wit me" and that she "always set [him] off"; the count 12 text told Orduno "I want u dead"; in count 13, Martinez told her he had a gun and would shoot her and anyone she was with; and in count 14, Martinez stated he was going to "fuck kill you bitch."

Although Martinez's voice mail and text messages were sent to Orduno on one day throughout the day, that does not require as a matter of law that they be treated as an indivisible course of conduct for purposes of section 654. (See People v. Felix (2001) 92 Cal.App.4th 905, 915-916). In Felix the appellate court concluded the defendant could be punished for two criminal threats made on the same date and the trial court reasonably could infer that because the defendant was angry, he intended the second threat to cause new emotional harm. (Ibid.)

As in Felix, each of Martinez's criminal acts was discreet and complete when committed and a reasonable inference can be made that each voice mail and text was intended to cause new emotional harm. The trial court did not err in imposing consecutive sentences for counts 4, 5, 6, 8, 9, 10, 11, 12, 13, and 14.

People v. Martinez, 2013 Cal. App. Unpub. LEXIS 3884 at 26-29.

## 2.   Legal Standard

"The decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus." Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994); Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002) ("because the trial court actually had absolute discretion to impose either consecutive or concurrent sentences[,] ... neither an alleged abuse of discretion by the trial court in choosing consecutive sentences, nor the trial court's alleged failure to list reasons for imposing consecutive sentences, can form

1    the basis for federal habeas relief." (emphasis omitted)); see also Oregon v. Ice, 555

2    U.S. 160, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009) (no Apprendi error if a judge

3    determines to impose consecutive sentences in lieu of the jury).

4                    **3.     Analysis**

5          Petitioner contends that he was improperly sentenced, and that the sentence for

6    the criminal threats conviction arising from his text messaging should have been stayed

7    and found to be part of the same course of conduct.

8          Petitioner's argument that it was one continuous episode is solely based on an

9    interpretation of California's sentencing law, and, therefore, his claim cannot be reviewed

10   by a federal court on a petition for habeas corpus. See Estelle v. McGuire, 502 U.S. 62,

11   67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court

12   determinations on state-law questions."). Even if this Court could review this claim, there

13   was no error by the California court as there was sufficient evidence to support the

14   consecutive sentences based on Petitioner's separate actions. Each message was a

15   new and separate threatening statement sent to the victim. As Petitioner's claim does not

16   implicate federal law, the claim is not cognizable on federal habeas review.

17         In his traverse, Petitioner also claims that it was cruel and unusual punishment to

18   be sentenced multiple times for the same conduct. The Eighth Amendment provides that

19   "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and

20   unusual punishments inflicted." U.S. Const. amend. VIII; Norris v. Morgan, 622 F.3d

21   1276, 1285 (9th Cir. 2010). In noncapital cases where the Eighth Amendment challenge

22   is to the length of a sentence, the United States Supreme Court has interpreted "cruel

23   and unusual punishments" to mean sentences that are "'grossly disproportionate" to the

24   crime. Norris, 622 F.3d at 1285; Ewing v. California, 538 U.S. 11, 23, 123 S. Ct. 1179,

25   155 L. Ed. 2d 108 (2003); Harmelin v. Michigan, 501 U.S. 957, 1001, 111 S. Ct. 2680,

26   115 L. Ed. 2d 836 (1991) (Kennedy, J., joined by O'Connor and Souter, JJ., concurring);

27   Lockyer v. Andrade, 538 U.S. 63, 72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003)

28   ("Through this thicket of Eighth Amendment jurisprudence, one governing legal principle

1    emerges as "clearly established" under § 2254(d)(1): A gross disproportionality principle

2    is applicable to sentences for terms of years."). Although the precise contours of this

3    principle are unclear because there has been a "lack of clarity regarding what factors

4    may indicate gross disproportionality," Andrade, 538 U.S. at 72-73, what is clear is that

5    the gross disproportionality principle is applicable only in the "exceedingly rare" and

6    "extreme" case. Id. at 73; Harmelin, 501 U.S. at 1001; Solem v. Helm, 463 U.S. 277,

7    289-90, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983).

8        In Norris, a panel of the Ninth Circuit observed that the "gross disproportionality

9    principle necessarily has a core of clearly established meaning," and held that "in

10   applying [the] gross disproportionality principle courts must objectively measure the

11   severity of a defendant's sentence in light of the crimes he committed." Norris, 622 F.3d

12   at 1287; see also Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004) (while  Supreme

13   Court precedent is the only authority that is controlling under the AEDPA, Ninth Circuit

14   case law may provide persuasive authority).

15       Here, the severity of Petitioner's sentence was not grossly disproportionate to the

16   crimes he committed. Petitioner repeatedly threatened the victim with violence causing

17   the victim emotional distress. See Norris, 622 F.3d at 1292 (to determine the gravity of

18   an offense, courts must look beyond the label of the crime to examine the "factual

19   specifics" of the offense). As a result, his sentence of sixteen years and eight months

20   does not qualify as one of those "exceedingly rare" or "extreme" cases that would entitle

21   him to federal habeas relief on the basis that it is cruel and unusual. See, e.g., Harmelin,

22   501 U.S. at 961-1009 (mandatory term of life in prison without the possibility of parole for

23   first-time offender possessing 672 grams of cocaine was not cruel and unusual

24   punishment); see also Kennedy v. Louisiana, 554 U.S. 407, 463-64, 128 S. Ct. 2641,

25   171 L. Ed. 2d 525 (2008) (Alito, J., joined by Scalia and Thomas, JJ., dissenting)

26   (implying that the death penalty would be an appropriate punishment for child rape in

27   cases where the victim was raped multiple times, the rapes occurred over an extended

28   period, or in cases involving multiple victims).

1   Moreover, in this case, it is clear that the California law provided for the sentence

2   imposed, and he has pointed to no clearly established Supreme Court precedent finding

3   otherwise. See Ewing, 538 U.S. at 30 n.2; see also Hutto v. Davis, 454 U.S. 370, 372,

4   102 S. Ct. 703, 70 L. Ed. 2d 556 (1982) (the United States Supreme Court "has never

5   found a sentence for a term of years within the limits authorized by statute to be, by

6   itself, a cruel and unusual punishment."). Petitioner is not entitled to federal habeas relief

7   for his Eighth Amendment cruel and unusual punishment claim. It is recommended that

8   Petitioner's fifth claim for relief be denied.

9   **V.    Recommendation**

10   Accordingly, it is hereby recommended that the petition for a writ of habeas

11   corpus be DENIED with prejudice.

12   This Findings and Recommendation is submitted to the assigned District Judge,

13   pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after

14   being served with the Findings and Recommendation, any party may file written

15   objections with the Court and serve a copy on all parties.  Such a document should be

16   captioned "Objections to Magistrate Judge's Findings and Recommendation."  Any reply

17   to the objections shall be served and filed within fourteen (14) days after service of the

18   objections.  The parties are advised that failure to file objections within the specified time

19   may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d

20   834, 839 (9th Cir. 2014).

21

22   IT IS SO ORDERED.

23   Dated:   __December 14, 2016__        __/s/ Michael J. Seng__

24                                                    UNITED STATES MAGISTRATE JUDGE

25

26

27

28

31